AMY JANE LONGO, Cal. Bar. No. 198304
Email: longoa@sec.gov
DONALD W. SEARLES, Cal. Bar. No. 135705
Email: searlesd@sec.gov
ROBERTO A. TERCERO, Cal. Bar No. 143760
Email: terceror@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka Patel, Associate Regional Director
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>JASON McDIARMID, KENNETH TELFORD and INTERACTIVE MULTI-MEDIA AUCTION CORP. (aka STOP SLEEP GO INC.)<br><br>Defendants. | Case No. 2:17-CV-07201-SVW-FFM<br><br>**DECLARATION OF ERIC FLESCHE IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT KENNETH TELFORD**<br><br>Date: September 17, 2018<br>Time: 1:30 p.m.<br>Ctrm: 10A<br>Judge: Hon. Stephen V. Wilson |

## DECLARATION OF ERIC FLESCHE

I, Eric Flesche, declare pursuant to 28 U.S.C. § 1746 as follows:

1.  I have personal knowledge of the matters set forth herein, except as otherwise noted, and, if called as a witness, I could and would competently testify under oath to the facts stated herein.

2.  I am 41 years old, and a resident of Los Angeles, , California.

3.  I am the Chief Compliance Officer, Financial Operations Officer and part owner of Glendale Securities, Inc., and have been so employed since 2005.

4.  I have been employed in the securities industry since 1999, having previously worked at Mellon Bank as a stock trader (2000-2001), and at JP Morgan as a stock broker (2001-2003).

5.  Glendale Securities is located in Sherman Oaks, California and is both a broker and a market maker. A market maker is a firm that stands ready to buy or sell a stock at publicly quoted prices. Among other services, Glendale Securities: offers retail brokerage accounts; accepts the deposit of shares of stock, subject to documentation requirements and compliance review, including OTCBB, OTCQB, and Pink Sheet stocks; and facilitates sponsors' securities for quotation clearance by filing Form 211 applications, pursuant to SEC Rule 15c2-11. Quotation clearance allows the sponsoring market maker to post offers to buy (bids) and sell (asks) for consideration by the investing public.

6.  SEC Rule 15c2-11 is designed to help prevent fraudulent, deceptive or manipulative acts or practices. To that end, Rule 15c2-11 requires brokers and dealers, such as Glendale Securities, to have in their possession various documents and information about the issuer and, based upon a review of such information, to have a reasonable basis under the circumstances to believe that such information is true and accurate in all material respects, and that the sources of such information are reliable.

7. A Form 211 application provides basic information regarding the company that is required to be submitted to FINRA to initiate or resume quotations in a quotation medium, as defined in Exchange Act Rule 15c2-11(e)(1), including, but not limited to the OTC Bulletin Board or OTM Link. In addition to the Form 211 application, Exchange Act Rule 15c2-11 requires additional information be provided by the issuer to the market maker (*i.e.,* Glendale Securities), for the initiation or resumption of quotations without specified information, including, among other things, a copy of the issuer's prospectus, most recent annual and quarterly reports, the name of the CEO and members of the board of directors, and most recent balance sheet and profit and loss and retained earnings statement. Rule 15c2-11 also requires information concerning the person submitting the quotation, whether the quotation is being submitted or published, directly or indirectly, on behalf of the issuer, or any director, officer or person who has more than 10% of the outstanding shares of the issuer and, if so, the name of such person, and the basis for any exemption under the federal securities laws for any sales of such securities on behalf of that person.

8. From my experience, FINRA typically requires issuers to have least 30 shareholders with free trading shares, at least 1 million shares outstanding, and at least 250,000 free trading shares. The number of shareholders of an issuer, and the concentration of share ownership between and among the shareholders, are important, not only for FINRA quotation approval purposes, but also to assess the probability that a viable market exists, or can be created, for the purchase and sale of the issuer's stock. The more shareholders an issuer has, and the more even the distribution of shares amongst those shareholders, are both positive indicators that a viable market can be created for the issuer's shares. Market makers generate revenue through commissions from both purchases and sales of stock. The greater the viability of the market, the more likely a market maker will generate commissions and consequently profits for its efforts. It is, therefore, important to a market maker, such as Glendale

1 Securities, that a stock has the potential for a viable market, and that there be
2 numerous shareholders so the shares are not concentrated in just a few hands.

3      9.     If Glendale Securities were to learn that any documents or information
4 provided to it by the issuer, or the issuer's representatives or agents, were not true and
5 accurate in all material respects, it would not attempt to initiate or resume quotation
6 services for the issuer and would not submit a Form 211 application to FINRA on the
7 issuer's behalf.

8      **The Preparation and Submission of IMMA's Form 211 Application**

9      10.     Jason McDiarmid was referred to me by a representative of Issuer Direct
10 Corporation, of Morrisville, North Carolina, which acted as IMMA's transfer agent.

11      11.     I have reviewed Testimony Exhibit ("Ex.") 28, which I understand is
12 attached to the Declaration of Amy J. Longo in Support of the SEC's Motion for
13 Summary Judgment against Defendant Kenneth Telford ("Longo Declaration"). Ex.
14 28 is a true and correct copy of a series of emails, beginning on December 31, 2012
15 and ending on September 30, 2013, from Leticia Meza, a Glendale employee, to
16 Jason McDiarmid, on which I was copied. Those email communications concern
17 Glendale Securities' preparation and submission of a Form 211 application on behalf
18 of McDiarmid's company, Essential Innovations Technology Corporation, and
19 McDiarmid's request for Glendale Securities' assistance in the preparation of a Form
20 211 application for Interactive Multi-Media Auction Corporation ("IMMA"), which
21 McDiarmid stated he was involved with in a consulting capacity.

22      12.     I have reviewed Testimony Exhibit 29, which I understand is attached to
23 the Longo Declaration. Ex. 29 is a true and correct copy of an email, dated
24 September 30, 2013, from Leticia Meza, a Glendale employee, to Jason McDiarmid,
25 on which I was copied, along with various attachments requiring the disclosure of
26 various information to Glendale Securities to assist in the preparation of IMMA's
27 Form 211 application, including a list of ownership of officers, directors and any 5%
28 shareholders, a statement of whether any person has control of the shares listed on the

shareholder list, other than the person or entity identified as the shareholder, and a description of how the freely trading shares on the issuer's shareholder list were acquired.  All of this information is relevant to determine if the issuer, or its shareholders or control persons are engaged, or about to engage, in fraudulent or deceptive conduct, such as by engaging in a pump and dump scheme.

13. I have reviewed Testimony Exhibit 39, which I understand is attached to the Longo Declaration.  Ex. 39 a true and correct copy of the Form 211 application for IMMA that Glendale Securities prepared and submitted to FINRA, including a completed information statement.  IMMA's Form 211 application was prepared by Glendale Securities' staff.  I reviewed IMMA's Form 211 application and signed that document on or about October 30, 2013, in my capacity as the Chief Compliance Officer of Glendale Securities.

14. IMMA's Form 211 application lists Amber McCandless as the beneficial owner of 3,000,000 IMMA shares, or 26.79% of IMMA's outstanding shares.  The attachments to IMMA's Form 211 also include various subscription agreements and consulting agreements, purportedly signed by Amber McCandless, in her capacity as CEO of IMMA, by which various amounts of IMMA shares were purportedly transferred to other persons and/or entities.

15. IMMA's Form 211 also refers to IMMA's S-1 and the amendments thereto, which I reviewed as part of Glendale Securities' due diligence in connection with the preparation of IMMA's Form 211.  I understand that amendment number six (6) to IMMA' S-1 is attached as Testimony Exhibit 5 to the Longo Declaration.  Among other things, Ex. 5 states that IMMA entered into a loan agreement with Morpheus Financial Corporation ("Morpheus"), a shareholder of IMMA, and that Morpheus had agreed to loan IMMA up to $75,000, of which $27,500 had been drawn down.

16. I have been advised by the SEC that Amber McCandless has testified under oath that she never received any shares in IMMA, that she never signed

IMMA's S-1 registration statement or any amendments thereto or authorized anyone to sign them on her behalf, that she knew nothing about any of IMMA's subscription agreements, never authorized the private offering of any IMMA shares, did not sign any of the IMMA consulting agreements that purportedly bear her signature, and was not aware and did not approve of any loan agreements between IMMA and Morpheus. Had I known any of these facts, I would have prevented Glendale Securities from submitting a Form 211 application to FINRA on IMMA's behalf, and would not have allowed Glendale Securities to provide any brokerage or market maker services to IMMA or to any of its shareholders because:

    a) Glendale Securities would be submitting a false and misleading application to FINRA, which regulates Glendale Securities;

    b) If the private offerings of IMMA's shares were not, in fact, authorized, there would be a serious question as to whether any of the supposed shareholders did, in fact, own any IMMA shares. If that were the case, IMMA's shares would not be as widely distributed as represented by IMMA, and it would, therefore, be less likely that FINRA would approve IMMA's Form 211 application, or that a viable market for IMMA stock could be created. Consequently, there would be a lower possibility of Glendale Securities making a market in the stock or generating commissions and profits from market making activities;

    c) If CEO McCandless did not sign the IMMA consulting agreements or approve the loan agreements between IMMA and Morpheus, the company would be less likely to be profitable and therefore there would be less investor interest in the stock and, therefore, fewer shares traded, which again would affect Glendale's commissions and profits;

    d) If CEO McCandless was simply a straw CEO, and if IMMA were, in fact, controlled by McDiarmid and/or Telford, serious questions would be presented about the free-trading nature of IMMA's stock and whether the shares held

by undisclosed affiliates or control persons would be subject to a lock-up period and could not be traded.

e) If the statements in the S-1 registration statement above were not true, there would be a greater likelihood that the IMMA was a vehicle for fraudulently trading stock in a manipulative scheme.

**The Offer and Sale of IMMA's Shares Through Glendale Securities**

17. In connection with Ecogenics Limited's ("Ecogenics") first Glendale account, in November 2013, McDiarmid told me that Ecogenics would be the shareholder making the initial deposit of IMMA shares into Ecogenics' account and that it was a purchaser of shares from the S-1.

18. I have reviewed Testimony Exhibit 220, which I understand is attached to the Longo Declaration. Ex. 220 is a series of emails beginning on October 29, 2013 and ending on November 18, 2013, between myself, Jason McDiarmid and Amber McCandless, regarding their interest in opening a new account at Glendale Securities, and advising them that a corporate account application had been submitted by Ecogenics, which would be the shareholder making the initial deposit of IMMA shares. As noted in the email I received from McDiarmid, dated November 18, 2013, it was my understanding, based on reading IMMA's S-1 registration statement, that Ecogenics was a purchaser of IMMA shares, and not a selling stockholder, pursuant to IMMA's S-1.

19. I have reviewed Testimony Ex. 274, which I understand is attached to the Longo Declaration. Ex. 274 is a true and accurate copy of a Vision account opening application submitted and signed by Kenneth Telford on or about November 16, 2013 on behalf of Ecogenics to set up a brokerage account at Glendale Securities. Telford represented himself to be the sole officer, director and secretary of Ecogenics and was the beneficial owner of and sole authorized person on Ecogenics' brokerage account at Glendale Securities.

20. I have reviewed Testimony Exhibit 276, which I understand it attached to the Longo Declaration. Ex. 276 is a true and correct copy of a Glendale Securities foreign account questionnaire prepared and signed by Telford on or about November 16, 2013, for the purpose of depositing stock at Glendale Securities and transferring trading profits to an HSBC account in Hong Kong that he controlled.

21. I have reviewed Testimony Exhibit 286, which I understand is attached to the Longo Declaration. Ex. 286 is a true and correct copy of a deposit security request for the deposit at Glendale Securities of two share certificates of IMMA stock in Ecogenics' name, one certificate in the amount of 500,000 shares, and the other in the amount of 125,000 shares. This checklist was submitted to Glendale Securities on or about April 2, 2014, and I reviewed and approved it on or about April 3, 2014, in my capacity as Chief Compliance Officer of Glendale Securities. The approval is the first nine pages of Exhibit 286. Brokerage customers submit deposit security requests so that, if approved by their brokerage firm, the shares are placed in the customer's account and can then be sold into the public market. Brokerage firms review deposit security requests before allowing the share deposit to confirm that the offer and sale of the shares comply with the requirement that a registration statement, for the customer's anticipated offers and sales, comply with the requirement that, absent an exemption, a registration statement covering the offers and sales is on file and in effect.

22. In Ex. 286, Telford represented that Ecogenics acquired its 625,000 IMMA shares pursuant to certain stock purchase agreements and services agreements, and that it was not an affiliate of IMMA. With respect to the 500,000 share certificate, according to the documents contained in Ex. 286, on or about September 30, 2012, Sienna McCandless entered into a consulting agreement with IMMA and that in exchange for her services would receive shares of IMMA. Thereafter, on or about November 21, 2013, Sienna McCandless, "for value

1  received," transferred her 500,000 shares to Ecogenics.  The remaining 125,000
2  IMMA shares were purportedly transferred to Ecogenics by Mel Grace Carlos.
3      23.    I have been advised by the SEC that Sienna McCandless has testified
4  under oath that she never received any shares in IMMA, that she was not aware she
5  was the owner of any shares, provided no consulting services to IMMA, was not
6  aware she was supposed to receive shares in IMMA in exchange for such services. I
7  have further been advised by the SEC that Sienna McCandless has testified under
8  oath that she had not heard of Ecogenics and had not provided any consulting
9  services to it, and did not provide or transfer shares in IMMA to Ecogenics or to
10 anyone else.  I have further been advised by the SEC that Ecogenics' principal,
11 Telford, controlled IMMA with McDiarmid, that Telford, through his ownership of
12 Ecogenics and Pompeii beneficially owned 9.9% of IMMA's stock, and that the
13 deposit security request form (Ex. 286) did not disclose that that Ecogenics had
14 obtained an additional 275,000 IMMA shares pursuant to a consulting agreement.
15 Had I been aware of the actual affiliations between McDiarmid and Telford, the
16 nominees, and IMMA, or the false statements concerning IMMA's initial
17 capitalization contained in the Form 211 application, I would not have approved the
18 submission of IMMA's Form 211 application to FINRA, and would have prevented
19 Glendale Securities from accepting the deposit of any IMMA shares, and would not
20 have allowed Glendale Securities to provide and brokerage or market maker services
21 to IMMA or to any of its shareholders because:
22      a)   Ecogenics may not have complied with the requirements to
23 exempt its future offers and sales of IMMA shares from its account;
24      b)   Telford, through his beneficial ownership of 9.9% of IMMA's
25 stock, would have likely been subject to stock lock-up requirements preventing his
26 sale of IMMA stock; and
27      c)   there would be a greater likelihood that the IMMA was a
28 vehicle for fraudulently trading stock in a manipulative pump and dump scheme.

24. In December 2014, I advised Telford that Glendale Securities was terminating its relationship with Vision Financial (its clearing broker) and offered Telford that Ecogenics could open a new trading account through Glendale Securities' new relationship with Electronic Transaction Clearing, Inc. ("ETC"). I have reviewed Testimony Exhibit 275, which I understand is attached to the Longo Declaration. Ex. 275 is a true and correct copy of an application by Ecogenics, dated on or about December 4, 2014, to open a new brokerage account at Glendale Securities for trades executed through ETC. As with Ecogenics' prior account at Glendale Securities using Vision Financial, Kenneth Telford is the sole authorized individual on that new Glendale/ETC account, and he signed the new account application form in his capacity as President, Secretary and sole director of Ecogenics. A new account, through Glendale/ETC was opened in January 2015, and any IMMA stock in the Glendale/Vision account was transferred to that new account.

25. I have reviewed Exhibit 25, which I understand is attached to the Declaration of Christopher Conte filed in support of the SEC's motion for summary judgment. Exhibit 25 is a true and correct copy of a Glendale Securities' monthly account statements for the Ecogenics account for the period April 1, 2014 through September 30, 2015. Those statements reflect Telford's deposit of 625,000 IMMA shares on or about April 8, 2014, and Telford's subsequent sales of those shares between November 2014 and April 2015. The only securities that Telford traded or sold through Ecogenics' Glendale Securities account were shares of IMMA.

26. I have reviewed Exs. 98, 99, 100 which I understand are attached to the Longo Declaration. Each of these exhibits is a true and correct copy of customer outgoing wire request forms signed by Telford and submitted to Glendale Securities, by which Telford directed that monies be wired from Ecogenics' account at Glendale Securities to Ecogenics' account at HSBC in Hong Kong.

27. I have reviewed Testimony Exhibit 73, which I understand is attached to the Longo Declaration. Ex. 73 is a true and correct copy of an email, dated February

24, 2014, from me to McDiarmid, in which I advised McDiarmid that IMMA is now DTCC full service eligible.

28. I have reviewed Testimony Exhibit 42, which I understand is attached to the Longo Declaration. Ex. 42 is a true and correct copy a letter from FINRA, dated April 9, 2014, to Glendale Securities, stating that FINRA, in reliance on the information Glendale Securities had submitted to FINRA pursuant to Exchange Act Rule 15c2-11, had cleared Glendale Securities' request to submit a bid and ask quote for IMMA on the OTC Bulletin Board and OTC Link.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 10, 2018 in Sherman Oaks, California

*[signature]*

Eric Flesche

11

# **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action. My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On August 13, 2018, I caused to be served the document entitled **DECLARATION OF ERIC FLESCHE IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT KENNETH TELFORD** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☒ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☐ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: August 13, 2018           */s/ Amy Jane Longo*
                                Amy Jane Longo

*SEC v. Jason McDiarmid, et al.*
United States District Court—Central District of California
Case No. 2:17-CV-07201-SVW-FFM

## SERVICE LIST

Kenneth Telford
kgc.telford@gmail.com
(by email only)