AMY JANE LONGO, Cal. Bar. No. 198304
Email: longoa@sec.gov
DONALD W. SEARLES, Cal. Bar. No. 135705
Email: searlesd@sec.gov
ROBERTO A. TERCERO, Cal. Bar No. 143760
Email: terceror@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka Patel, Associate Regional Director
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>JASON McDIARMID, KENNETH TELFORD and INTERACTIVE MULTI-MEDIA AUCTION CORP. (aka STOP SLEEP GO INC.)<br><br>Defendants. | Case No. 2:17-CV-07201-SVW-FFM<br><br>**DECLARATION OF GEORGE CASTILLO IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT KENNETH TELFORD**<br><br>Date: September 17, 2018<br>Time: 1:30 p.m.<br>Ctrm: 10A<br>Judge: Hon. Stephen V. Wilson |

# DECLARATION OF GEORGE CASTILLO

I, George Castillo, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I have personal knowledge of the matters set forth herein, except as otherwise noted, and, if called as a witness, I could and would competently testify under oath to the facts stated herein.

2. I am 52 years old, and a resident of Valencia, California.

3. I am the President and part owner of Glendale Securities, Inc., and have been so employed since 2005.

4. I have been employed in the securities industry for over thirty (30) years and became a stock broker in 1992.

5. Glendale Securities is located in Sherman Oaks, California and is both a broker and a market maker. Among other services, Glendale Securities offers brokerage accounts, accepts the deposit of, subject to documentation requirement and compliance review, OTCBB/OTCQB/Pink Sheet stocks, and facilitates the electronic trading of such stocks by assisting clients with meeting DTC eligibility requirements and, as a market maker, by preparing and submitting Form 211 to FINRA, pursuant to SEC Rule 15c2-11.

6. SEC Rule 15c2-11 is designed to help prevent fraudulent, deceptive or manipulative acts or practices. To that end, Rule 15c2-11 requires brokers and dealers, such as Glendale Securities, to have in their possession various documents and information about the issuer and, based upon a review of such information, to have a reasonable basis under the circumstances to believe that such information is true and accurate in all material respects, and that the sources of such information are reliable.

7. A Form 211 provides basic information regarding the company that is required to be submitted to FINRA to initiate or resume quotations in a quotation medium, as defined in Exchange Act Rule 15c2-11(e)(1), including, but not limited to the OTC Bulletin Board or OTM Link ATS. In addition to the Form 211, Exchange

Act Rule 15c2-11 requires additional information be provided by the issuer to the market maker (*i.e.,* Glendale Securities), for the initiation or resumption of quotations without specified information, including, among other things, a copy of the issuer's prospectus, most recent annual and quarterly reports, the name of the CEO and members of the board of directors, most recent balance sheet and profit and loss and retained earnings statement, and that there be at least 30 shareholders with free trading shares, at least 1 million shares outstanding, and at least 250,000 free trading shares.  Rule 15c2-11 also requires information concerning the person submitting the quotation, whether the quotation is being submitted or published, directly or indirectly, on behalf of the issuer, or any director, officer or person who has more than 10% of the outstanding shares of the issuer and, if so, the name of such person, and the basis for any exemption under the federal securities laws for any sales of such securities on behalf of that person.

8. The number of shareholders of an issuer, and the concentration of share ownership between and among the shareholders, are important, not only for FINRA quotation approval purposes, but also to assess the probability that a viable market exists, or can be created, for the purchase and sale of the issuer's stock.  The more shareholders an issuer has, and the more even the distribution of shares amongst those shareholders, are both positive indicators that a viable market can be created for the issuer's shares.

9. If Glendale Securities were to learn that any documents or information provided to it by the issuer, or the issuer's representatives or agents, were not true and accurate in all material respects, it would not attempt to initiate or resume quotation services for the issuer and would not submit a Form 211 to FINRA on the issuer's behalf.

**The Preparation and Submission of IMMA's Form 211**

10. I have reviewed Testimony Ex. 39, which I understand is attached to the Longo Declaration. Ex. 39 a true and correct copy of the Form 211 for Interactive Multi-Media Auction Corporation ("IMMA") that Glendale Securities prepared and submitted to FINRA, including a completed information statement. I assisted in the preparation IMMA's Form 211 based, in large part, on the information provided to Glendale Securities by the issuer, and in particular, by Jason McDiarmid, who I understood was a consultant for IMMA.

11. IMMA's Form 211 lists Amber McCandless as the beneficial owner of 3,000,000 IMMA shares, or 26.79% of IMMA's outstanding shares. The attachments to IMMA's Form 211 also include various subscription agreements and consulting agreements, purportedly signed by Amber McCandless, in her capacity as CEO of IMMA, by which various amounts of IMMA shares were purportedly transferred to other persons and/or entities.

12. IMMA's Form 211 also refers to IMMA's S-1 and the amendments thereto, which I reviewed as part of Glendale Securities' due diligence in connection with the preparation of IMMA's Form 211. I understand that amendment number six (6) to IMMA' S-1 is attached as Testimony Ex. 5 to the Longo Declaration. Among other things, Ex. 5 states that IMMA entered into a loan agreement with Morpheus Financial Corporation ("Morpheus"), a shareholder of IMMA, and that Morpheus had agreed to loan IMMA up to $75,000, of which $27,500 had been drawn down.

13. I have been advised by the SEC that Amber McCandless has testified under oath that she never received any shares in IMMA, that she never signed IMMA's S-1 registration agreement or any amendments thereto or authorized anyone to sign them on her behalf, that she knew nothing about any of IMMA's subscription agreements, never authorized the private offering of any IMMA shares, did not sign any of the IMMA consulting agreements that purportedly bear her signature, and was not aware and did not approve of any loan agreements between IMMA and Morpheus. Had I known any of these facts, I would not have prepared or submitted a

1 Form 211 to FINRA on IMMA's behalf, and would not have allowed Glendale
2 Securities to provide any brokerage or market maker services to IMMA or to any of
3 its shareholders as I would have been concerned that IMMA, and its shareholders and
4 control persons, intended to engage in a pump and dump scheme

**The Offer and Sale of IMMA's Shares Through Glendale Securities**

6     14.    I have reviewed Testimony Ex. 274, which I understand is attached to
7 the Longo Declaration. Ex. 274 is a true and correct copy of an account application
8 submitted by Kenneth Telford on or about November 16, 2013 on behalf of
9 Ecogenics to set up a brokerage account at Glendale Securities. Telford represented
10 himself to be the sole officer, director and secretary of Ecogenics and was the
11 beneficial owner of and sole authorized person on Ecogenics' brokerage account at
12 Glendale Securities.

13     15.    I have reviewed Testimony Ex. 276, which I understand is attached to
14 the Longo Declaration. That document is a true and correct copy of a Glendale
15 Securities account questionnaire prepared and signed by Telford on or about
16 November 16, 2013, for the purpose of depositing stock at Glendale Securities and
17 transferring trading profits to an HSBC account in Hong Kong.

18     16.    I have reviewed Testimony Ex. 286, which I understand is attached to
19 the Longo Declaration. Ex. 286 is a true and correct copy of a completed physical
20 stock certificate checklist for the deposit at Glendale Securities of two share
21 certificates of IMMA stock in Ecogenics' name, one certificate in the amount of
22 500,000 shares, and the other in the amount of 125,000 shares. This checklist was
23 submitted to Glendale Securities on or about April 2, 2014.

24     17.    In Ex. 286, Telford represented that Ecogenics acquired its 625,000
25 IMMA shares pursuant to certain stock purchase agreements and services
26 agreements. With respect to the 500,000 share certificate, according to the
27 documents contained in Ex. 286, on or about September 30, 2012, Sienna
28 McCandless entered into a consulting agreement with IMMA and that in exchange

1  for her services would receive shares IMMA.  Thereafter, on or about November 21,
2  2013, Sienna McCandless, "for value received," transferred her 500,000 shares to
3  Ecogenics.  The remaining 125,000 IMMA shares were purportedly transferred to
4  Ecogenics by Mel Grace Carlos.  It was my understanding, based on reading IMMA's
5  S-1, that Ecogenics was a purchaser of IMMA shares, and not a selling stockholder.
6  Ecogenics' status as a purchaser of IMMA shares was important to me, as it made
7  IMMA appear to be a bona fide company in which other persons or entities, separate
8  and apart from the issuer, have the confidence to invest in.

9       18.   I have been advised by the SEC that Sienna McCandless has testified
10 under oath that she never received any shares in IMMA, that she was not aware she
11 was the owner of any shares, provided no consulting services to IMMA, was not
12 aware she was supposed to receive shares in IMMA in exchange for such services,
13 and did not provide or transfer shares in IMMA to Ecogenics or to anyone else.  Had
14 I known any of these facts, I would not have accepted the deposit of any IMMA
15 shares and would not have allowed Glendale Securities to provide any brokerage or
16 market maker services to IMMA or to any of its shareholders, as I would have been
17 concerned that IMMA, and its shareholders and control persons, intended to engage
18 in a pump and dump scheme.

19       19.   I have reviewed Testimony Ex. 297, which I understand is attached to
20 the Longo Declaration. Ex. 297 is a true and correct copy of a Glendale Securities'
21 monthly account statements for the Ecogenics account for the period April 1, 2014
22 through September 30, 2015.  Those statements reflect Telford's deposit of 625,000
23 IMMA shares on or about April 8, 2014, and Telford's subsequent sales of those
24 shares between November 2014 and April 2015.  The only securities that Telford
25 traded or sold through Ecogenics' Glendale Securities account were shares of IMMA.
26 For each of the sales reflected in Ex. 297, I personally took the sell orders from
27 Telford and executed those trades at his direction.
28

1     20.   I have reviewed Exs. 98, 99, and 100, which I understand are attached to the Longo Declaration. Each of these exhibits is a true and correct copy of customer outgoing wire request forms signed by Telford and submitted to Glendale Securities, by which Telford directed that monies be wired from Ecogenics' account at Glendale Securities to Ecogenics' account at HSBC in Hong Kong.

    21.   I have reviewed Testimony Exhibit 42, which I understand is attached to the Longo Declaration. Ex. 42 is a true and correct copy a letter from FINRA, dated April 9, 2014, to Glendale Securities, stating that FINRA, in reliance on the information Glendale Securities had submitted to FINRA pursuant to Exchange Act Rule 15c2-11, had cleared Glendale Securities' request to submit a bid and ask quote for IMMA on the OTC Bulletin Board and OTC Link.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 10, 2018 in Sherman Oaks, California.

_/s/ George Castillo_
George Castillo

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On August 13, 2018, I caused to be served the document entitled **DECLARATION OF GEORGE CASTILLO IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT KENNETH TELFORD** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☒ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☐ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: August 13, 2018                  */s/ Amy Jane Longo*
                                       Amy Jane Longo

*SEC v. Jason McDiarmid, et al.*
United States District Court—Central District of California
Case No. 2:17-CV-07201-SVW-FFM

**SERVICE LIST**

Kenneth Telford
kgc.telford@gmail.com
(by email only)