AMY JANE LONGO, Cal. Bar. No. 198304
Email: longoa@sec.gov
DONALD W. SEARLES, Cal. Bar. No. 135705
Email: searlesd@sec.gov
ROBERTO A. TERCERO, Cal. Bar No. 143760
Email: terceror@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka Patel, Associate Regional Director
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>JASON McDIARMID, KENNETH TELFORD and INTERACTIVE MULTI-MEDIA AUCTION CORP. (aka STOP SLEEP GO INC.)<br><br>Defendants. | Case No. 2:17-CV-07201-SVW-FFM<br><br>**DECLARATION OF CHRISTOPHER CONTE IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT KENNETH TELFORD**<br><br>Date: September 17, 2018<br>Time: 1:30 p.m.<br>Ctrm: 10A<br>Judge: Hon. Stephen V. Wilson |

# DECLARATION OF CHRISTOPHER CONTE

I, Christopher M. Conte, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I have personal knowledge of the matters set forth herein, except as otherwise noted, and, if called as a witness, I could and would competently testify under oath to the facts stated herein.

2. I am a certified public accountant with Plaintiff Securities and Exchange Commission (the "SEC") in its Los Angeles Regional Office. I have been employed by the SEC in the Division of Enforcement since August 2013. I have been licensed as a certified accountant by the State of California since 2007. I have been a certified fraud examiner since 2006.

3. From August 2001 to May 2013, I worked at one of the "big four" accounting firms. My duties at this firm included forensic and investigative accounting, litigation support, and damage analysis.

4. In the course of my duties with the SEC, I analyze bank records, financial records, and other books and records of companies, and I make calculations and observations based upon those records. The documents that I analyze in the course of my duties with the SEC are of the type reasonably relied upon by accountants in forming opinions and inferences about, among other things, the purchases and sales of securities.

5. During the course of the SEC's litigation, and pursuant to my duties as an accountant with the SEC, I reviewed brokerage records (including underlying detail, such as account statements, account opening documents, and trade blotters) for accounts associated with Pompeii Finance Corp. ("Pompeii") , Ecogenics Limited ("Ecogenics") and Denon Capital Strategies Limited ("Denon"). Based upon my review of various brokerage records, I was able to analyze purchases and sales of shares of Interactive Multi-Media Auction Corp. ("IMMA").

Case 2:17-cv-07201-SVW-FFM   Document 62   Filed 08/13/18   Page 3 of 12   Page ID #:750

A.  **Brokerage Accounts Reviewed**

6.  I reviewed brokerage records of the following account associated with Pompeii:

   a) Meyers Associates, L.P. Account No.XXXX-8628 ("Account No. 8628") in the name of Pompeii, for the period September 30, 2014 through May 29, 2015. A true and correct copy of the Investment Account Application and related documents for this account is attached hereto as **Exhibit 1** (SEC-MA-E-0000097-151).

7.  My review of the brokerage records of Account No. 8628 show that from September 30, 2014 to May 29, 2015, Pompeii sold 905,559 shares of IMMA for gross proceeds of $1,151,779.13 and net proceeds of $1,103,978.87. A true and correct summary of the trade blotter reflecting Pompeii's trades is attached hereto as **Exhibit 2**.

8.  I reviewed brokerage records of the following accounts associated with Ecogenics:

   a) Glendale Securities, Inc. Account No.XXXX-4648 ("Account No. 4648") in the name of Ecogenics, for the period October 1, 2014 through May 29, 2015. A true and correct copy of the Investment Account Application and related documents for this account is attached hereto as **Exhibit 3** (SEC-GS-E-0020970-21006); and

   b) Glendale Securities, Inc. Account No.XXXXX-8EGLD ("Account No. 8EGLD") in the name of Ecogenics, for the period October 1, 2014 through May 29, 2015. A true and correct copy of the Investment Account Application and related documents for this account is attached hereto as **Exhibit 4** (SEC-GS-E-0002242-2264).

9.  My review of the brokerage records of Account No. 4648 show that from October 1, 2014 to May 29, 2015, Ecogenics sold 85,036 shares of IMMA for

gross proceeds of $330,003.48 and net proceeds of $319,994.78. A true and correct summary of the trade blotter reflecting Ecogenics' trades is attached hereto as **Exhibit 5**.

10. My review of the brokerage records of Account No. 8EGLD show that from October 1, 2014 to May 29, 2015, Ecogenics sold 1,303,147 shares of IMMA for gross proceeds of $1,807,750.46 and net proceeds $1,753,294.51. A true and correct summary of the trade blotter reflecting Ecogenics' trades is attached hereto as **Exhibit 6**.

11. My review of the brokerage records of Account No. 4648 and Account No. 8EGLD show that from October 1, 2014 to May 29, 2015, Ecogenics sold 1,388,183 shares of IMMA for gross proceeds of $2,137,753.94 and net proceeds $2,073,289.29. A true and correct summary of the trade blotter of Ecogenics is attached hereto as **Exhibit 7**.

12. I reviewed brokerage records of the following accounts associated with Denon:

    a) Charles Schwab Account No. XXXX-0166 ("Account No. 0166") in the name of Denon, for the period September 29, 2014 through May 29, 2015. A true and correct copy of the Investment Account Application and related documents for this account is attached hereto as **Exhibit 8** (CRR-1511-09662-000001-56).

13. My review of the brokerage records of Account No. 0166 show that from September 29, 2014 to May 29, 2015, Denon sold 517,508 shares of IMMA for gross proceeds of $139,379.72 and net proceeds of $138,967.32. A true and correct summary of the trade blotter reflecting Denon's trades is attached hereto as **Exhibit 9**.

**B. Incoming and outgoing wires**

14. My review of the brokerage records of Account No. 8628 show that between December 11, 2014 to March 4, 2015, Kenneth Telford ("Telford") signed

1  requests for wire transfers totaling $650,000.00 from Account No. 8628 to Pompeii's
2  HSBC account, Account No. XXXXXX-791838 ("Account No. 1838"). A true and
3  correct summary of the outgoing wires is attached hereto as **Exhibit 10**. A true and
4  correct copy of the Investment Account Application and related documents for
5  Account No. 1838 is attached hereto as **Exhibit 11** (SEC-SECPHL-E-0000029 -80).

6      15.    My review of the brokerage records of Account No. 8628 show that
7  Telford also signed a check in the amount of $400,000.00, dated April 1, 2015, and
8  deposited the check into his personal Bank of America account, Account No.
9  XXXXXX-XX7486 ("Account No. 7486").  I have reviewed the Declaration of Amy
10 Jane Longo filed concurrently herewith, and a true and correct copy of the check is
11 attached to her declaration as Exhibit 34.

12      16.    My review of the brokerage records of Account No. 4648 show that
13 between October 23, 2014 to December 23, 2014, Telford signed requests for wire
14 transfers totaling $316,500 from Account No. 4648 to Ecogenics HSBC account,
15 Account No. XXXXXX-585838 ("Account No. 5838").   My review of the brokerage
16 records of Account No. 8EGLD show that from between January 15, 2015 to April
17 29, 2015, Telford signed requests for wire transfers totaling $2,580,000.00 from
18 Account No. 8EGLD to Account No. 5838.  A true and correct summary of the
19 outgoing wires is attached hereto as **Exhibit 12**. A true and correct copy of the
20 Investment Account Application and related documents for Account No.5838 is
21 attached hereto as **Exhibit 13** (SEC-SECPHL-E-0000003-28).

22      17.    My review of the brokerage records of Account No. 0166 show that
23 between March 20, 2015 to August 17, 2015, Telford signed requests for wire
24 transfers totaling $53,000 from Account No. 8628 to Denon's HSBC account,
25 Account No. XXXXXX-357838 ("Account No. 7838"). A true and correct summary
26 of the outgoing wires is attached hereto as **Exhibit 14**.  A true and correct copy of the
27 Investment Account Application and related documents for Account No.7838 is
28 attached hereto as **Exhibit 15** (SEC-SECPHL-E-0000081-126).

18. My review of the brokerage records of the above accounts show that Telford transferred $3,999,950.00 from the nominee brokerage accounts to either the nominee bank accounts at HSBC or his personal Bank of America account.

| Account sending wires | Amount | Account receiving wires |
|---|---|---|
| Account No. 8628 | $650,000.00 | Account No. 1838 |
| Account No. 8628 (check) | $400,000 | Account No. 7486 |
| Account No. 4648 | $316,500.00 | Account No. 5838 |
| Account No. 8EGLD | $2,580,000.00 | Account No. 5838 |
| Account No.0166 | $53,000.00 | Account No. 7838 |
|  |  |  |
| **Total** | $3,999,950.00 |  |

19. My review of the bank records of Account No. 5838 show that between October 29, 2014 to May 6, 2015, Ecogenics sent wires totaling $646,450.00 to Account No. 0166. A true and correct summary of the outgoing wires is attached hereto as **Exhibit 16**. A true and correct copy of the wires received into Account No. 0166 is attached hereto as **Exhibit 17** (SEC-SCHWAB-E-0000283-296).

20. My review of the bank records of Account No. 1838 show that between October 23, 2014 to July 20, 2015, Pompeii sent wires totaling $58,450.00 to Account No. 0166. A true and correct summary of the outgoing wires is attached hereto as **Exhibit 18**. As noted in paragraph 20, a true and correct copy of the wires received into Account No. 0166 is attached hereto as Exhibit 17 (SEC-SCHWAB-E-0000283-296).

21. My review of the account records of Account No. 0166 show that Denon received $704, 900 wired from Pompeii and Ecogenics, and purchased over 630,000 shares of IMMA's stock in the public market, for $747, 677.60, between

5

October 2, 2014 to May 8, 2015. A true and correct summary of the trade blotter reflecting Denon purchases is attached hereto as **Exhibit 19**.

22. My review of the bank account records for Account No. 1838 and Account No. 5838 show that between November 2014 through 2016, Mary Rose Casin received $195,933 in wires transfers from Pompeii and Ecogenics. I have reviewed the Declaration of Amy Jane Longo filed concurrently herewith, and a true and correct copy of the Pompeii wires to Casin is attached to her declaration as Exhibit 77. A true and correct copy of the Ecogenics wires to Casin is attached hereto as **Exhibit 20**.

C. **Promotional Campaign and Telford trading**

23. I have reviewed the trading and price volume for IMMA. For the period from September 30, 2014 to May 29, 2015, there were 167 trading days. During that time, Telford was responsible for:

    a) 75% or more of the total trading volume in the market on 60 days;

    b) 50% - 74% of the total trading volume in the market on 28 days; and

    c) 25% - 49% of the total trading volume in the market on 20 days.

A true and correct listing of the adjusted close prices and volume of IMMA stock during this period is attached hereto as **Exhibit 21**.[1]

24. During the April 26, 2015 to May 5, 2015 email component of the promotion campaign, IMMA's stock price increased from $1.39 to $1.62 per share, a 16.5% increase. On the last day of the campaign, the stock decreased from $1.38 to

---

[1] On January 28, 2015, IMMA announced a forward-split of the issued and outstanding shares of common stock on the basis for four new shares for each share. The split was approved by FINRA and took effect on February 3, 2015. *See* Note 6, on page F-11 of Form10-K Report filed on February 12, 2015. The trading and price volume analysis herein reflects this stock split.

6

$0.67, a 51% drop. A true and correct chart summarizes the stock price of IMMA during this period is attached hereto as **Exhibit 22**.

25. My review of Telford's production of documents to the SEC show a bank book for a Chinatrust Bank Corporation ("CTBC") account, Account No. 1206000270-2SD-FX-REG ("Account No. 0270") in the name of Kenneth Telford or Maribel Telford. A true and correct copy of the bank book is attached hereto as **Exhibit 23** (KT_SEC_003173-3175).

26. My review of documents produced to the SEC by the Securities and Exchange Commission of the Philippines show account opening and maintenance documents for Account No. 0270, reflecting Kenneth Telford and Maribel Fernandez Telford as joint account owners, and attaching their marriage license. A true and correct copy of the account opening and maintenance documents are attached hereto as **Exhibit 24** (SEC- SEC-SECPHL-P-00000022-34, at pp. SEC-SECPHL-P-00000028, 34).

27. Attached as **Exhibit 25** hereto is a true and correct copy of chronologically compiled monthly brokerage account statements produced by Glendale Securities to the SEC for Account No. 4648 and Account No. 8EGLD, for the time period April 2014 through April 2015.

**D.  Calculation of Gross Trading Proceeds**

28. Based on the information above, I estimate that at least 2,865,250 shares of IMMA were sold for gross proceeds of $3,428,912.79 by Pompeii, Ecogenics and Denon.

29. The gross proceeds are summarized below:

$1,151,779.13   Gross proceeds by Pompeii (Paragraph 7)

$330,003.48   Gross proceeds by Ecogenics (Paragraph 9)

$1,807,750.46   Gross proceeds by Ecogenics (Paragraph 10)

$139,379.72   Gross proceeds from Denon (Paragraph 13)

---

$3,428,912.79   TOTAL

E. **Calculation of Net Trading Proceeds**

30. Based on the information above, I estimate that at least 2,865,250 shares of IMMA were sold for net proceeds of $3,316,235.48 by Pompeii, Ecogenics and Denon.

31. The net proceeds are summarized below:

$1,103,978.87   Net proceeds by Pompeii (Paragraph 7)

$319,994.78   Net proceeds by Ecogenics (Paragraph 9)

$1,753,294.51   Net proceeds by Ecogenics (Paragraph 10)

$138,967.32   Net proceeds from Denon (Paragraph 13)

---

$3,316,235.48   TOTAL

32. I calculated the prejudgment interest owed on the disgorgement amount that SEC requests – the $3,316,235.48 of net proceeds. I calculated that interest on a quarterly basis over the period from October 30, 2014 to September 29, 2017. October 30, 2014 is the last day of the month of the first month shares of IMMA were sold by Pompeii Finance. September 29, 2017 is the date that the SEC filed its Complaint in this action. The interest rate I used is the same interest used by the Internal Revenue Service to calculate underpayment penalties, and it defined the Internal Revenue Service to calculate underpayment penalties, and is defined as the

8

Federal short term rate (also known as the period rate) plus three percentage points (also known as the annual rate). 26 U.S.C. § 6621(a)(2). Instead of calculating interest separately for each sale of IMMA, the sales for the entire month were aggregated and interest was calculated on the aggregated amount for that month as of the end of that month.

33. I determined that the prejudgment interest on the requested disgorgement amount of $3,316,235.48 is $302,871.91. In making this calculation, I utilized a computer program maintained by the SEC to calculate prejudgment interest in SEC enforcement actions.

34. The total amount of combined disgorgement and prejudgment interest that the SEC is requesting the Court to order the defendant to pay is $3,619,107.39.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 10, 2018 in Los Angeles, California.

*/s/ Christopher M. Conte*
Christopher M. Conte

# **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action. My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On August 13, 2018, I caused to be served the document entitled **DECLARATION OF CHRISTOPHER CONTE IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT KENNETH TELFORD** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☒ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☐ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  August 13, 2018                         */s/ Amy Jane Longo*
                                                Amy Jane Longo

10

*SEC v. Jason McDiarmid, et al.*
United States District Court—Central District of California
Case No. 2:17-CV-07201-SVW-FFM

**SERVICE LIST**

Kenneth Telford
kgc.telford@gmail.com
(by email only)