AMY J. LONGO, Cal. Bar. No. 198304
Email: longoa@sec.gov
DONALD W. SEARLES Cal. Bar. No. 135705
Email: searlesd@sec.gov
ROBERTO A. TERCERO, Cal. Bar No. 143760
Email: terceror@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka Patel, Associate Regional Director
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

FILED
CLERK, U.S. DISTRICT COURT
NOV 19 2018
CENTRAL DISTRICT OF CALIFORNIA
BY [signature] DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>JASON McDIARMID, KENNETH TELFORD and INTERACTIVE MULTI-MEDIA AUCTION CORP. (aka STOP SLEEP GO INC.)<br><br>Defendants. | Case No. 2:17-CV-07201-SVW-FFM<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DEFENDANT TELFORD'S JOINT AND SEVERAL LIABILITY FOR DISGORGEMENT OF NET TRADING PROCEEDS** |

Pursuant to Fed. R. Civ. P. 52(a), C.D. Cal. Local Rule 52-1 and the Court's request at the November 13, 2018 hearing on Plaintiff Securities and Exchange Commission's ("SEC") motion for monetary relief (Dkt. No. 73), the SEC submits these Proposed Findings of Fact and Conclusions of Law regarding defendant Kenneth Telford's ("Telford") joint and several liability with codefendant Jason McDiarmid for disgorgement of the net trading proceeds from the sale of stock in defendant Multi-Media Auction Corporation ("IMMA").

## I. **FINDINGS OF FACTS**

1. In or around July 2012, Telford and McDiarmid created IMMA for the purpose of taking it public and profiting from a $3.1 million pump-and-dump scheme.

2. From September to November 2012, Telford and McDiarmid created a fictitious loan agreement, several fictitious internal memoranda, sham private placement offerings and sham consulting agreements, including with the nominee entities they controlled, to make it appear IMMA was a well-capitalized *bona fide* company.

3  Telford and McDiarmid took IMMA public in 2013 through a Form S-1 registration statement and amendments that were materially false and misleading. McDiarmid and Telford controlled the entire registration statement process. Telford prepared IMMA's financial statements, in which he incorporated the fabricated transactions that he and McDiarmid created to make IMMA look like a *bona fide* company.

4. Telford and McDiarmid provided IMMA's auditor with the documents for the fabricated transactions and, after the initial Form S-1 was filed, Telford became the auditor's primary contact, providing updated financial statements each quarter while the Form S-1 was being reviewed.

5. Telford and McDiarmid propagated these misrepresentations to IMMA's market maker and transfer agent, and to certain brokerage firms, to enable public trading of IMMA's stock and their nominees' deposit of shares and repeated their

false statements in IMMA's periodic SEC reports and related statements to its outside auditors in 2013 and 2014.

   6. Once IMMA's stock could trade publicly, Telford and McDiarmid, beginning in 2014, orchestrated a boiler room and email blast campaign aggressively promoting IMMA's stock, in order to liquidate their shares through their nominees.

   7. By June 2015, Telford, McDiarmid, and their nominee entities had sold over 2.4 million IMMA shares for net proceeds of $3,316,235.48, which they promptly transferred overseas.

   8. During his deposition in this action, Telford asserted his Fifth Amendment right against self-incrimination to every question that was put to him,

## II. CONCLUSIONS OF LAW

   1. Based on the consent judgment entered against Telford on September 5, 2018 (Dkt. No. 67 (Telford's Consent); Dkt. No. 68 (Judgment)), the facts alleged in the SEC's Complaint establishing Telford's liability for violations of the federal securities law are undisputed and admitted for purposes of the SEC's motion for monetary relief. *See SEC v. JT Wallenbrock & Assoc.*, 440 F.3d 1109, 1112 (9th Cir. 2006).

   2. Telford asserted his privilege against self-incrimination to every question that was put to him at his lengthy deposition. As such, all of his factual assertions in his opposition to the SEC's motion are ignored. *See, e.g., Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911-12 (9th Cir. 2008); *Bassett v. City of Burbank*, No. 2:14-cv-01348 SVW-CW, 2014 WL 12573395, at **1-2 (C.D. Cal. Nov. 14, 2014); *SEC v. Interlink Data Network of Los Angeles, Inc.*, CIV No. 93-3073-R, 1993 WL 603274, at *8 n.97 (C.D. Cal. 1993).

   3. "[A] district court has broad equity powers to order the disgorgement of ill-gotten gains obtained through violation of the securities laws." *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010), quoting *SEC v. First Pacific Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998). "The amount of disgorgement

should include all gains flowing from the illegal activities." *Platforms Wireless*, 617 F.3d at 1096, *quoting JT Wallenbrock*, 440 F.3d at 1114.

4. The SEC has calculated a reasonable approximation of the amount of ill-gotten gains obtained by Telford. As set forth in the Declaration of Christopher Conte that was filed in support of the SEC's motion for summary judgment (Dkt. No. 62), defendants' net proceeds from the sale of IMMA stock were $3,316,235.48. Dkt. No. 62, ¶ 30.

5. Joint and several liability for disgorgement is appropriate when co-defendants "collaborate or have a close relationship in engaging in the violations of the securities laws." *Platforms Wireless*, 617 F.3d 1072, 1098 (9th Cir. 2010).

6. Telford, acting with scienter, worked closely with McDiarmid to create false and misleading registration statements and periodic filings for IMMA; fabricated documents and prepared financial statements to make it appear as if IMMA was an actual startup company with a commensurate financial condition, including to IMMA's auditor; falsely represented to brokerage firms the holdings of IMMA stock and concealed his and McDiarmid's control person status; directed the sale of IMMA shares; and directed the transfer of the trading proceeds to offshore accounts. Given his central role in the scheme, and his close working relationship ~~with McDiarmid,~~ joint and several liability is appropriate.

7. Disgorgement normally includes prejudgment interest to insure that wrongdoers do not profit from their illegal conduct. *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1105 (2d Cir. 1972).

8. Prejudgment interest on the disgorgement amount of $3,316,235.48 is $302,871.91. Dkt No. 62 (Conte Decl.), ¶ 33. Thus, Telford is ordered to pay disgorgement and prejudgment interest, on a joint and several basis with McDiarmid, totaling $3,619,107.39.

**IT IS SO ORDERED.**

Dated: 11/19/18

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

Presented by:

*/s/Donald W. Searles*

Donald W. Searles
Attorney for Plaintiff

4